# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOLIE DESIGN & DÉCOR, INC.**                **CIVIL ACTION**

**VERSUS**                                    **NO:  15-740**

**KATHY VAN GOGH**                            **SECTION: "S" (5)**

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Kathy van Gogh's Motion to Vacate Arbitration Award (Doc. #9) is **DENIED**.

**IT IS FURTHER ORDERED** that Jolie Design & Décor, Inc.'s Motion to Confirm Arbitration Award (Doc. #19) is **GRANTED**.

**IT IS FURTHER ORDERED** that Jolie Design & Décor, Inc.'s Motion for Attorneys' Fees and Costs Incurred in Brining this Confirmation Proceeding (Doc. #19) is **GRANTED**, and Jolie Design & Décor, Inc. must file within 15 days of the date of this Order a motion to set such amounts and set that motion for hearing before the United States Magistrate Judge.

## BACKGROUND

This matter is before the court on defendant's motion to vacate the arbitration award (Doc. #9) and plaintiff's motion to confirm the arbitration award (Doc. #19).  Defendant, Kathy van Gogh, argues that the arbitration award should be vacated because the arbitrator exceeded his authority. Plaintiff, Jolie Design & Décor, Inc., argues that the arbitration award should be confirmed because the arbitrator acted within the scope of his authority.

Annie Sloan Interiors, Ltd. is a British corporation that owns Annie Sloan brand products, including ANNIE SLOAN CHALK PAINT.  "CHALK PAINT" is a decorative paint used to give

furniture an "antiqued" look by achieving a "chalky" matte finish.[1]  Jolie Design, a company based in Kenner, Louisiana, is the exclusive distributor and licensee of "CHALK PAINT" in the United States and other countries.  Van Gogh, who resides in Vancouver, Canada, entered into a contract with Jolie Design to sell Annie Sloan brand products, including "CHALK PAINT."  This dispute arose when van Gogh's relationship with Jolie Design ended and van Gogh started selling products called "Kathy van Gogh Chalk Paint Collection," which Jolie Design claims violated the parties' agreement with respect to the use of "Intellectual Property."

On June 17, 2011, van Gogh and Jolie Design entered into the initial Retail Distribution Agreement (the "June RDA").  The June RDA was amended on October 5, 2011, by a subsequent Retail Distribution Agreement (the "October RDA").  The October RDA, which represents the entire agreement between the parties,[2] granted van Gogh "a nonexclusive, nontransferable license" to use "Intellectual Property."  The October RDA defined "Intellectual Property" as "the trademarks, trade names, logos, and other designations used by Annie Sloan, Jolie Design, & Davis Paint for the Products" that van Gogh would sell.  Section 6(a) of the October RDA included the following limitations on van Gogh's use of the "Intellectual Property":

---

[1] "Chalk Paint" is a registered trademark of Annie Sloan Interiors, Ltd. for "paints for arts and crafts; [and] [p]aints for decorative purposes."  The trademark registration indicates that it was first used in 2003 and first used in commerce in 2004.

[2] The October RDA includes the following clause:

> 17. **ENTIRE AGREEMENT**. This Agreement constitutes the entire and exclusive statement of agreement between the parties with respect to its subject matters and there are no oral or written representations, understandings or agreements relating to this Agreement which are not fully expressed herein.

You agree to comply with all guidelines that Jolie Design may set related to your use of the Intellectual Property. Jolie Design has the right to review and approve, at its discretion, any use of the Intellectual Property and any presentation of the Products. Jolie Design has the right to prohibit the use of the Intellectual Property in any manner. You agree to report to Jolie Design immediately, in writing, any acts of infringement of the Intellectual Property of which you learn.  You agree to discontinue the use of the Intellectual Property immediately upon termination of this Agreement, upon breach of any term of this Agreement or upon initiation of litigation related to this Agreement.  Except for the rights and licenses granted to you herein, Jolie Design and/or its licensors shall retain all right, title and interest in the Products including all rights under or to the Intellectual Property.

i. URLs and Social Media Pages: Your/your company's website or related social media sites shall not include the terms "Annie Sloan," "Chalk Paint," and/or "Jolie Design" in the web address or user identification field.

ii. Hyperlinks: The use of Intellectual Property to hyperlink to you/your company's website is strictly prohibited.  Any logo, image, or other mark that serves as a hyperlink to your/your company's website should reflect you and/or your company and shall not incorporate any Intellectual Property.

iii. Search Engine Optimization ("SEO"):  You are prohibited from using the terms "Annie Sloan," "Chalk Paint," and/or "Jolie Design" for SEO purposes on you/your company's website or social media pages.

The October RDA included a "Dispute Resolution" clause which provided that any dispute arising out of the agreement would be submitted to arbitration in New Orleans, Louisiana, and that Louisiana law would apply.  It also provided that the prevailing party in any dispute arising out of the agreement is entitled to recover its costs and expenses, including reasonable attorneys' fees.

In April 2012, Jolie Design sought to amend the October RDA to add more terms that van Gogh claims were unfavorable to her.  Van Gogh, who did not agree to the terms of the amendment, provided written notice to Jolie Design on April 18, 2012, that she was terminating the parties'

3

contract.  That same day, van Gogh applied to register with the United States Patent and Trademark Office ("USPTO") the trademark "Kathy van Gogh Chalk Paint Collection." On April 21, 2012, van Gogh registered the domain name "vangoghchalkpaintcollection.com."

Thereafter, van Gogh challenged the validity of the Annie Sloan's "CHALK PAINT" trademark in various proceedings, and filed an opposition seeking to preclude the registration of the "CHALK PAINT" logo, before the Trademark Trial and Appeals Board ("TTAB").  Van Gogh also applied to register "Kathy van Gogh Chalk Paint Collection" with the United States Patent and Trademark Office ("USPTO").  When Annie Sloan Interiors opposed the application, van Gogh argued that "CHALK PAINT" is an invalid trademark.

On July 9, 2013, Jolie Design filed an arbitration demand against van Gogh alleging that she breached the parties' contract by continuing to "use the CHALK PAINT trademark following the termination of the Agreement."  On September 30, 2013, Anthony M. DiLeo was appointed as the sole arbitrator.  In the arbitration, Jolie Design sought to enjoin van Gogh from: challenging the validity of the "CHALK PAINT" trademark; using the term "CHALK PAINT" to identify her products; and, advertising, producing, offering or distributing any goods or services using the term "CHALK PAINT".  Jolie Design also sought an order requiring van Gogh to: withdraw her application pending before the USPTO and the Canadian Intellectual Property Office for trademarks that use the term "CHALK PAINT"; immediately and permanently dismiss a Cancellation action pending before the TTAB in which she seeks to challenge the "CHALK PAINT" trademark; transfer to Jolie Design the domain name van Gogh took out that included the words "CHALK PAINT"; and the stop selling "van Gogh CHALK PAINT".  Van Gogh countered that the "CHALK PAINT" trademark is invalid, and that this is matter for the USPTO to decide.

On December 17, 2013, Jolie Design filed a Motion for Dispositive Ruling asking the arbitrator to "dispose of the trademark validity issues – which are both meritless and irrelevant to the breach of contract claims at issue."  Jolie Design characterized the question presented in the arbitration as "[w]heter Ms. van Gogh's continued use of the CHALK PAINT trademark following her termination . . . constitute[d] a breach of Ms. van Gogh's obligation per Section 6(a) of the contract."  Van Gogh responded that the issue is "whether or not a trademark has been infringed."

In his July 9, 2014, Order Regarding Scope of Case and Interim Award, the arbitrator found that it was not appropriate to address the validity of the trademark or trade name in that forum.  The only claim at issue was a breach of contract claim between Jolie Design and van Gogh, because Annie Sloan, the trademark owner, was not a party to the proceedings, and van Gogh did not file a counterclaim for a declaratory judgment regarding the invalidity of the trademark.  The arbitrator noted that the proceedings before the TTAB would determine the ultimate ownership of the trademark and trade name, whereas the proceeding before him involved only a claim for breach of contract.  The arbitrator found that "[t]he specific language of the contract contemplates restrictions on the use of the words 'chalk paint' by" van Gogh, and that she breached the contract by attempting to register the trademark "KATHY VAN GOGH CHALK PAINT COLLECTION." The record remained open until August 8, 2014, for the parties to submit further materials regarding attorneys' fees or costs, specific performance and compensatory damages.

On January 19, 2015, the arbitrator issued is Order and Final Award Regarding Costs, Expenses and Attorneys' Fees.  The arbitrator denied van Gogh's motion for reconsideration of the interim award, stating again that the only claim before him was Jolie Design's breach of contract claim against van Gogh.  The arbitrator incorporated and reaffirmed the July 9, 2014, Order

Regarding Scope of Case and Interim Award.  He enjoined van Gogh from using the term "CHALK PAINT" as a product identifier and from advertising, producing, offering, or distributing any goods or services using the words "CHALK PAINT" as required by the contract.  The arbitrator also awarded to Jolie Design $1,194.40 for the court reporter and transcript, $45,000 in attorneys' fees, $5,250 for the International Centre for Dispute Resolution's administrative fees and expenses, $16,028.50 for the arbitrator's compensation and expenses.

On March 6, 2015, Jolie Design filed this action in the United States District Court for the Eastern District of Louisiana seeking a confirmation of the arbitration award under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958) 21 U.S.T. 2517, T.I.A.A. 6997, 330 U.N.T.S. 3 (the "New York Convention"), as implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201, *et seq.*  On April 20, 2015, van Gogh filed a Motion to Vacate the Arbitration Award (Doc. #9).  She argues that the arbitration award is invalid because the arbitrator exceeded his authority.  Van Gogh contends that the October RDA was not validly formed due to a lack of consent because she and Jolie Design did not have a meeting of the minds regarding the definition of "Intellectual Property."  Van Gogh claims that she did not understand that the definition of "Intellectual Property" included the term "CHALK PAINT," which she asserts is generic.  Instead, she thought that she was forbidden from using the term "ANNIE SLOAN CHALK PAINT" after the termination of the agreement.  Van Gogh also argues that even if the October RDA was a valid contract, the arbitrator exceeded his authority by looking

outside the October RDA to the June RDA to interpret the meaning of "Intellectual Property", and by awarding an unreasonable amount of attorneys' fees.[3]

Jolie Design argues that the enforceability of the arbitration clause was a matter for the arbitrator, not the court, to decide.  Further, Jolie Design argues that the arbitrator did not exceed his power by referencing the June 2011 agreement, and he did not award an unreasonable amount of attorneys' fees.

On May 11, 2015, Jolie Design filed a Motion to Confirm Arbitration Award (Doc. #19) in which it argues that none of the grounds for a court's refusing to recognize an arbitration award under the New York Convention are met.  Jolie Design restates its position that van Gogh's argument regarding the meeting of the minds is a collateral attack on the arbitrator's interpretation of the contract, which is not permitted, and that the arbitrator acted within his authority.

In opposition to Jolie Design's motion to confirm, van Gogh argues that the court can decide *de novo* whether the October RDA exists, and that the agreement was not validly formed.  She also argues again that the arbitrator exceeded his authority and awarded an unreasonable amount of attorneys' fees.[4]

---

[3] Van Gogh also argued that Jolie Design did not comply with a jurisdictional requirement by failing to provide the court with a proper copy of the October RDA.  On April 30, 2015, Jolie Design filed an Amended Complaint to cure any such defect.

[4] On May 28, 2015, van Gogh filed a Motion to Stay Confirmation of Arbitration Award (Doc. #26), arguing that the matter should be stayed until the TTAB disposed of the pending cancellation proceeding regarding the "CHALK PAINT" trademark because if "CHALK PAINT" were found to be generic, it could not have been part of the "Intellectual Property" referred to in the October RDA, and then there would be "no meeting of the minds and no agreement to arbitrate."  On July 30, 2015, Judge Berrigan, to whom this matter was previously allotted, granted van Gogh's motion to stay.  On October 1, 2015, Jolie Design filed a Motion to Reopen Proceedings (Doc. #43), stating that on August 12, 2015, the TTAB ruled against van Gogh, refusing to register her proposed trademark. In opposition to Jolie Design's motion to lift the stay, van Gogh argued that, although her proceedings before the TTAB against Annie Sloan have concluded, there is an action by Websters Chalk Paint Powder, LLC to cancel Annie Sloan's "CHALK PAINT" trademark, and this action should remain stayed until that proceeding is concluded because it may result in the cancellation of

## ANALYSIS

### I.     The New York Convention

Jolie Design moved to confirm the arbitration award under the New York Convention.  Van Gogh moved to vacate the arbitration award under the FAA.

The New York Convention is a treaty that "provides a carefully structured framework for the review and enforcement of international arbitral awards." Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 287 (5th Cir. 2004).  It was implemented in the United States by Chapter 2 of the FAA. See 9 U.S.C. § 201 (the New York Convention treaty "shall be enforced in the United States courts in accordance with this chapter."). The New York Convention and the FAA "have 'overlapping coverage' to the extent that they do not conflict." Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997) (citations omitted).

The New York Convention provides that it

> shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal.  It

---

the "CHALK PAINT" trademark, which could affect the validity of the arbitration award.  On December 30, 2015, Judge Berrigan denied Jolie Design's motion to reopen.  On January 11, 2016, after this matter was realloted to this section, Jolie Design filed a Motion to Certify for Immediate Appeal the denial of its motion to reopen (Doc. #50), arguing that there is no basis under the New York Convention or any jurisprudence to delay the confirmation of its arbitration award because the validity of the "CHALK PAINT" trademark is irrelevant to the arbitration award which was based on a breach of contract action.  Van Gogh opposed the motion arguing that certifying the matter for interlocutory appeal is unwarranted because the court was correct to stay the matter pending the outcome of the proceedings regarding the validity of the "CHALK PAINT" trademark.  On March 31, 2016, this court granted Jolie Design's motion to certify for immediate appeal. (Doc. #59).  Thereafter, van Gogh filed a consent motion to lift stay stating that she wanted to go forward with the confirmation proceedings. (Doc. #60).  The court granted the motion and lifted the stay on April 18, 2016. (Doc. #61).

> shall also apply to arbitral awards not considered as domestic awards
> in the State where their recognition and enforcement are sought.

New York Convention art. I(1).  The arbitration award in this case was made in the United States, and Jolie Design seeks confirmation in the United States.  Thus, the New York Convention will apply if the arbitration award is "not considered as domestic" in the United States.

The New York Convention does not define the meaning of non-domestic arbitration awards. Yusuf Ahmed Alghanim & Sons, 126 F.3d at 18 (citing Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932 (2d Cir. 1983)).  However, Section 202 of the FAA provides that all arbitration awards arising out of commercial relationships are covered by the New York Convention, except for those awards that arise out of a commercial relationship "which is entirely between citizens of the United States . . . unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202.  The United States Court of Appeals for the Eleventh Circuit has "read this provision to define all arbitral awards not 'entirely between citizens of the United States' as 'non-domestic' for the purpose of Article I of the [New York] Convention." Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH, 141 F.3d 1434, 1441 (11th Cir. 1998).  Thus, the court found that an arbitration award granted in the United States that arose out of a dispute involving United States corporations on one side, and a German entity on the other, was a non-domestic award. Id. at 1437-41.

This case involves a United States corporation, Jolie Design, and a citizen of Canada, van Gogh.  The contract at issue contemplated the sale of Annie Sloan brand products by van Gogh in Canada.  Thus, this the arbitration award on which this action is predicated is a non-domestic award, and the New York Convention applies.

9

"Though its 'essential purpose' relates to the recognition and enforcement of foreign arbitral awards, the underlying theme of the New York Convention as a whole is clearly the autonomy of international arbitration." Gulf Petro Trading Co., Inc. v. Nigerian Nat'l Petroleum Corp., 512 F.3d 742, 746 (5th Cir. 2008) (quotation omitted).  Thus, the New York Convention "'mandates very different regimes for the review of arbitral awards (1) in the countries in which, or under the law of which, the award was made, and (2) in other countries where recognition and enforcement are sought.'" Id. (quoting Karaha Bodas, 335 F.3d at 364).  The country "in which, or under the [arbitration] law of which," an award was made has *primary* jurisdiction over the award, whereas, all other signatory countries are then *secondary* jurisdictions. Id. (emphasis in original) (citing Karaha Bodas, 335 F.3d at 364).

The New York Convention "'does not restrict the grounds on which primary-jurisdiction courts may annul an award, thereby leaving to a primary jurisdiction's local law the decision whether to set aside an award.'" Id. (quoting Karaha Bodas, 335 F.3d at 368).  "Such courts are 'free to set aside or modify an award in accordance with [the country's] domestic arbitral law and its full panoply of express and implied grounds for relief.'" Id. (quoting Yusuf Ahmed Alghanim & Sons, 126 F.3d at 23).  On the other hand, the New York Convention "significantly limits the review of arbitral awards in courts of a secondary jurisdiction; essentially, 'parties can only contest whether that [country] should enforce the arbitral award.'" Id. (quoting Karaha Bodas, 335 F.3d at 364).  Article V of the New York Convention "enumerates the exclusive grounds on which a court of

secondary jurisdiction may refuse recognition and enforcement of an award."[5] Id. at 747 (citations omitted).

   This court is a primary-jurisdiction court under the New York Convention because the underlying arbitration award was rendered in the United States.  Thus, van Gogh's motion to vacate the arbitration award is governed by the FAA.

_____

[5] Article V of the New York Convention provides that:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

   (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

   (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

   (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . .; or

   (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

   (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

   (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

   (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

## II.     The Federal Arbitration Act

Because the FAA reflects a strong federal policy favoring arbitration, "'[j]udicial review of an arbitration award is extraordinarily narrow.'" Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469, 472 (5th Cir. 2012) (quoting Brook v. Peak Int'l, Ltd., 294 F.3d 668, 672 (5th Cir. 2002)). An arbitration "award may not be set aside for a mere mistake of fact or law." Id. (quotation omitted).  The court's "'review of the arbitrator's award . . . is very deferential[,]'" and it must be sustained even if the court disagrees "'with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision 'draws its essence' from the contract.'" Timegate Studios, Inc. v. Southpeak Interactive, L.L.C., 713 F.3d 797, 802 (5th Cir. 2013) (quoting Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994)).   "'In other words, [the court] must affirm the arbitrator's decision if it is rationally inferable from the letter or purpose of the underlying agreement.'" Id. (quoting Executone, 26 F.3d at 1320).

Section 10 of the FAA enumerates the exclusive "'grounds upon which a reviewing court may vacate an arbitrative award.'" Id. (quoting Brook, 294 F.3d at 672).  Under subsection 10(a)(4), a court may vacate the award "where the arbitrator[] exceed [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).[6]  "Whether an arbitrator has exceeded his powers is tied closely to the applicable standard of review." Timegate Studios, 713 F.3d at 802.  "The question is whether the arbitrator's award 'was so unfounded in reason and fact, so unconnected with the wording and purpose of the

---

[6] Section 10 provides three other grounds upon which an arbitration award may be vacated: (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators; and, (3) where the arbitrators were guilty of misconduct in refusing the postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of the any party have been prejudiced.  9 U.S.C. § 10(a)(1)-(3).  These provisions are not applicable in this case.

[contract] as to manifest an infidelity to the obligation of an arbitrator.'" Id. (quoting Bhd. of R.R. Trainmen v. Cent. of Ga. Ry., 415 F.2d 403, 412 (5th Cir. 1969)).  Therefore, the "substantive question of whether an arbitrator has exceeded his arbitration powers is a function of [the] highly deferential standard of review in such cases: an arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties – the "essence" of the contract." Id. at 802-803.

Van Gogh contends that the arbitrator exceed his authority in three ways.  First, she argues that there was no contract due to a lack of consent, and thus no arbitration agreement.  Next, she argues that the arbitrator improperly relied on the June RDA in interpreting the meaning of "Intellectual Property" in the October RDA.  Finally, she argues that the arbitrator awarded an unreasonable amount of attorneys' fees.

**A.  Existence of the Contract**

Van Gogh contends that the arbitrator exceeded his authority because there was no valid contract, and thus, no valid arbitration agreement.  Van Gogh argues that the October RDA was not a valid contract due to a lack of consent because there was no meeting of the minds on the meaning of "Intellectual Property."  Van Gogh maintains that she thought "Intellectual Property" included the term "ANNIE SLOAN CHALK PAINT," not simply "CHALK PAINT," whereas Jolie Design contends that the term "CHALK PAINT" was included in the definition of "Intellectual Property." Van Gogh argues that this difference in interpretation of the term "Intellectual Property" is a vice of consent.  As a result, there was no valid contract or agreement to arbitration, and the issue of contract formation is for the court, not the arbitrator, to decide.

Jolie Design argues that the arbitrator had the authority to rule on issue of the formation of the October RDA because the parties voluntarily submitted the issue to him. Jolie Design points out that van Gogh argued in the arbitration that there was no meeting of the minds as to whether "CHALK PAINT" was included in the meaning of "Intellectual Property."

"Arbitration is a matter of contract," and courts are required by the FAA to honor the parties' expectations. OMG, L.P. v. Heritage Auctions, Inc., 612 Fed. Appx. 207, 210 (5th Cir. 2015) (quoting AT & T Mobility LLC v. Concepcion, 131 S.Ct 1740, 1752 (2011)). "'However, once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, [the court] must look both to their contract and the submission of the issue to the arbitrator to determine his authority.'" Id. (quoting Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1, 611 F.2d 580, 584 (5th Cir. 1980)). "Accordingly, by their actions, the parties may agree to arbitrate disputes that they were not otherwise contractually bound to arbitrate." Id. (citing Executone, 26 F.3d at 1323). Applying these principles, in OMG, 612 Fed. Appx. at 208, the United States Court of Appeals for the Fifth Circuit held that:

> the parties agreed to arbitrate the issue of contract formation by submitting, briefing, and generally disputing that issue throughout the arbitration proceeding, with the plaintiffs never contesting the arbitrator's authority to decide contract formation until he issued an adverse award. By submitting issues for an arbitrator's consideration, the parties may expand an arbitrator's authority beyond that provided by the original arbitration agreement such that [the court] need not address whether the original agreement encompassed such authority.

Id. (citing Piggly Wiggly, 611 F.3d at 584). Further, the court noted that if a party did not believe that the arbitrator had the authority to decide certain issues, "it should have refused to arbitrate,

leaving a court to decide whether the arbitrator could decide the contract formation issue." Id. at 211-12 (citation omitted).

In this case, van Gogh submitted the contract formation issue, particularly the parties' different understandings of the meaning of "Intellectual Property," to the arbitrator.  In her arbitration pre-hearing submission, van Gogh argued that Annie Sloan did not have a trademark in the term "CHALK PAINT".  In her arbitration closing submission, van Gogh argued that the "parties did not mutually agree, within the RDA, on restriction of the use of the phrase, 'chalk paint[,]'" and that the contract is null due to a lack of common intent.  Van Gogh also argued that the October RDA, which included the arbitration clause, was unenforceable because it was a contract of adhesion, and that the arbitration clause was void because she cancelled the contract.  Van Gogh clearly understood that she could argue that the arbitration clause was invalid.  However, van Gogh did not refuse to arbitrate on the ground that a valid contract was never formed due to a lack of consent.  Instead, she submitted that issue to the arbitrator for consideration.  Therefore, the arbitrator acted within his authority in ruling on the meaning of "Intellectual Property."

### B.  The Arbitrator's Reference to the June RDA

Van Gogh argues that the arbitrator exceeded his authority by relying on the June RDA to interpret the meaning of "Intellectual Property" in the October RDA.  She argues that this was impermissible because the October RDA purports to be the entire agreement between the parties.  Van Gogh also argues that the June RDA was not subject to arbitration because it did not have an arbitration clause.

Jolie Design argues that van Gogh consented to bringing the June RDA to arbitration by mentioning it in her submissions, and by testifying that she thought of the October RDA as an

15

extension of the June RDA.  Jolie Design also argues that the arbitrator had the authority to determine the scope of the arbitration.  Further, Jolie Design argues that the arbitration award can stand without reference to the June RDA.

Van Gogh's argument concerns the following language from the Final Arbitration Award:

> Moreover, as previously stated in the Interim Award, paragraph 13 of the [June] RDA granted a limited license by which Respondent Kathy van Gogh agreed: ". . . .*to discontinue use* of Intellectual Property immediately upon termination of this Agreement."  The Intellectual Property is defined not simply to be copyrights, trademarks, or trade names, but "proprietary rights in *or related to the Products*" and "*Products are those that Jolie Design shipped*". (Emphasis added) (See RDA, June 17, 2011).

According to van Gogh, this passage means that the arbitrator based the arbitration award on the definition of "Intellectual Property" found in the June RDA.  However, in the next sentence, the arbitrator quotes from paragraph 6 of the October RDA: "The provision of Intellectual Property specifically includes a license to use, not just a trade name and trademarks, but also "logos and *other designations used by Annie Sloan, Jolie Design ....*"  The arbitrator then concludes that, "[a]mong those designations or logos or 'proprietary rights' were the words 'chalk paint.'"  Thus, the arbitrator found that the "designations" and "logos" referenced in the October RDA included "chalk paint."

The June RDA and the October RDA both required van Gogh to discontinue use of the "Intellectual Property" immediately upon termination of the contract.  In the Interim Award, the arbitrator quoted the paragraphs pertinent to defining "Intellectual Property" from both RDAs.  The arbitrator concluded in the Final Arbitration Award that the term "Intellectual Property" as defined in the October RDA included "CHALK PAINT" because that phrase was a "designation" or "logo" used by Annie Sloan or Jolie Design.  Regardless of whether it was proper for the arbitrator to consider the June RDA, his reference to the "proprietary rights" in the June RDA is superfluous to

16

his ultimate finding that van Gogh breached the October RDA by continuing to use the phrase "CHALK PAINT", which was a "logo" or "designation" used by Annie Sloan or Jolie Design.  The arbitrator did not exceed his power because his ruling is consistent with the "essence" of the contract.

### C.  The Arbitrator's Award of Attorneys' Fees

Van Gogh argues that the arbitrator exceeded his authority by awarding an unreasonable amount of attorneys' fees.  She argues that an award of $45,000 in attorneys' fees is unreasonable because there were no depositions taken and discovery was minimal in the arbitration proceeding.  She also argues that it was unreasonable for Jolie Design to use the services of five attorneys when she was acting *pro se* during much of the arbitration proceeding.

Jolie Design argues that the attorneys' fees award is not unreasonable because the arbitrator reviewed submissions from both parties concerning the amount of attorneys' fees to be awarded and reduced Jolie Design's requested amount of $53,464 to $45,000.  Jolie Design contends that van Gogh's attempt to transform the arbitration proceedings "into a proxy battle against the validity and enforceability of the CHALK PAINT trademark" increased the amount of attorneys' fees incurred by Jolie Design, and that the arbitrator recognized this in making the award.

Van Gogh does not argue that the arbitrator did not have the authority to enter an award of attorneys' fees, but rather, the amount awarded was unreasonable. "A court must defer to the arbitrators' findings as to the appropriate amount of attorneys' fees." Wells Fargo Advisors, LLC v. Watts, 540 Fed. Appx. 229, 231 (4th Cir. 2013).  Because arbitrators are not required to explain there decisions and the court owes "strict deference" to an arbitrator's factual findings and legal determinations, "a court must defer to arbitrators' factual findings on attorneys' fees even if the

arbitrators do not explain a basis for the precise amount." <u>Id.</u> at 231-32.  Such deference is "particularly appropriate" when the arbitrator awards an amount of attorneys' fees well below the requested amount.  <u>Id.</u> at 232.

In this case, Jolie Design requested $53,464 in attorneys' fees and was awarded $45,000.  The arbitrator noted that Jolie Design indicated that its attorneys spent 242.2 hours working on this matter over 12 months, and that the billing rates for the attorneys ranged from $185 to $485 per hour, but that the majority of the work was performed by attorneys with an average rate of $200 per hour.  The award of $45,000 in attorneys' fees represents 225 hours of work billed at $200 per hour.  Because the court must give deference to the arbitrator's findings regarding the appropriate amount of attorneys' fees, the court finds that the arbitrator's award of attorneys' fees was not unreasonable and he did not exceed his authority.

In sum, the arbitrator did not exceed his authority in any of the ways proffered by van Gogh.  Thus, van Gogh's motion to vacate the arbitration award is DENIED. Section 9 of the FAA provides that the court must confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed" in the FAA. 9 U.S.C. § 9.  Further, Section 207 of the implementing legislation of the New York Convention provides that "the court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award." <u>Id.</u> at § 207.  As stated above, because this is a court of primary-jurisdiction, the FAA applies to determine whether the award should be enforced.  Thus, Jolie Design's motion to confirm the arbitration award is GRANTED.

18

**III.    Jolie Design's Motion for Attorneys' Fees and Costs Incurred in Connection with this Confirmation Proceeding**

Jolie Design seeks an award of attorneys' fees and costs incurred in bringing this confirmation proceeding.  It argues that such an award is appropriate either under the October RDA's "Dispute Resolution" clause or jurisprudence holding that an award of attorneys' fees incurred in seeking confirmation of an arbitration award is appropriate where the party defending against enforcement is without justification.  Van Gogh argues that such an award is inappropriate because she was justified in arguing that the arbitrator exceeded his authority.

Under the "American rule," attorneys' fees are not awarded to a prevailing party unless the award is specifically provided by contract, statute, or other provision of law. Barden Miss. Gaming Ltd. Liab. Co. v. Great N. Ins. Co., 638 F.3d 476, 479 (5th Cir. 2011).  The FAA does not provide for attorneys' fees, nor does it preclude an award of attorneys' fees. Crossville Med. Oncology, P.C. v. Glenwood Sys. LLC, 610 Fed. Appx. 464, 467 (6th Cir. 2015).  In confirming an arbitration award, a district court may award attorneys' fees and costs as long as such an award does not modify the arbitration decision. Schlobohm v. Pepperidge Farm, Inc., 806 F.2d 578, 580-81 (5th Cir. 1986).  Further, regardless of whether there is a contractul provision providing for an award of attorneys' fees, the United States Court of Appeals for the Fifth Circuit has held that a party to an arbitral award may be entitled to the attorneys' fees it incurs in enforcing that award if the noncomplying party's refusal to abide by the award was "without justification." Amalgamated Meat Cutters and Butcher Workmen of N. Am. AFL-CIO, Local Union 540 v. Great W. Food Co., 712 F.2d 122, 125 (5th Cir. 1983).

Jolie Design argues that attorneys' fees for this confirmation proceeding are permitted by the terms of the October RDA's "Dispute Resolution" clause.  The court must apply Louisiana state law

19

to interpret the contract.  <u>See</u> <u>Crossville</u>, 610 Fed. Appx. at 468.   In <u>Clovelly Oil Co., LLC v.</u>

<u>Midstates Petroleum Co., LLC</u>, 112 So.3d 187, 192 (La. 3/19/13) (citations and quotations omitted),

the Supreme Court of Louisiana explained the law applicable to contract interpretation:

> Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed.  When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract.  Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties.  However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

The "Dispute Resolution" clause provides:

> Should any dispute occur between the parties arising out of or relating to this Agreement, the dispute shall be settled and determined by arbitration under the current rules of the American Arbitration Association.  The arbitration proceedings shall be held and award shall be deemed to be made in New Orleans, Orleans Parish, Louisiana.  Further, this agreement shall be governed by the laws of the State of Louisiana, without regard to its conflict of laws rules. *The prevailing party in any such action to enforce this Agreement shall be entitled to recover its costs and expenses, including, without limitation, reasonable attorneys' fees.*

(emphasis added).  Pursuant to this clause, the prevailing party in an "action to enforce the Agreement" is entitled to recover costs, expenses and reasonable attorneys' fees.  "Agreement" is defied in the contract as the October RDA.  An action to enforce the "Agreement" logically includes litigation necessary to enforce the arbitration clause.  Therefore, the Jolie Design is entitled to recover costs, expenses and reasonable attorneys' fees incurred in connection with this confirmation proceeding. See Crossville, 610 Fed. Appx. at 469 (citing Sailfrog Software, Inc. v. Theonramp Grp., Inc., 1998 WL 30100 (N.D. Cal. 1/20/1998)).  Jolie Design's motion for costs, expense and attorneys' fees is GRANTED, and Jolie Design must file within 15 days of the date of this Order a motion to set such amounts and set that motion for hearing before the United States Magistrate Judge.

## CONCLUSION

**IT IS HEREBY ORDERED** that Kathy van Gogh's Motion to Vacate Arbitration Award (Doc. #9) is **DENIED**.

**IT IS FURTHER ORDERED** that Jolie Design & Décor, Inc.'s Motion to Confirm Arbitration Award (Doc. #19) is **GRANTED**.

**IT IS FURTHER ORDERED** that Jolie Design & Décor, Inc.'s Motion for Attorneys' Fees and Costs Incurred in Brining this Confirmation Proceeding (Doc. #19) is **GRANTED**, and Jolie Design & Décor, Inc. must file within 15 days of the date of this Order a motion to set such amounts and set that motion for hearing before the United States Magistrate Judge.

New Orleans, Louisiana, this  13th  day of June, 2016.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**