UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOLIE DESIGN & DÉCOR, INC.                        CIVIL ACTION

VERSUS                                            NUMBER: 15-0740

KATHY VAN GOGH                                    SECTION: "S"(5)

**REPORT AND RECOMMENDATION**

Before the Court is the motion to set costs and attorneys' fees filed by Plaintiff, Jolie

Design & Décor, Inc. ("Jolie Design").  (Rec. doc. 63).  Defendant, Kathy van Gogh ("van Gogh")

filed an opposition to the motion (rec. doc. 66) and Jolie Design filed a reply memorandum.

(Rec. doc. 70).  The Court heard oral argument on the motion on July 13, 2016 and took the

matter under advisement.  (Rec. doc. 71).  Having thoroughly considered the pleadings filed

by the parties and the exhibits attached thereto, the argument of counsel and taking into

consideration this Court's own experience and interactions with the parties and counsel

throughout the underlying litigation, the Court makes the following recommendation to the

District Judge.

I.      **RELEVANT PROCEDURAL HISTORY**

This action was initiated by Jolie Design for the purpose of enforcing an underlying

arbitration award obtained by it against van Gogh.  (Rec. doc. 1).  Shortly after the Complaint

was filed, van Gogh filed a motion to vacate that award (rec. doc. 9), which was followed in

short order by Jolie Design's competing motion to confirm the award.  (Rec. doc. 19).  While

those motions were pending, van Gogh sought a stay of this case, based on the pendency of

other proceedings before the U.S. Trademark Trial and Appeal Board ("TTAB") that she

argued were related to this one.  (Rec. doc. 26).  Jolie Design opposed the motion to stay (rec. doc. 33), but the District Judge[1] granted the motion on July 30, 2015.  (Rec. doc. 38).

For the next eight months, Jolie Design unsuccessfully attempted to have the stay lifted.  First, it filed a motion to reopen the case (rec. doc. 43), which was denied by the District Judge on December 30, 2015.  (Rec. doc. 49).  Then, on January 11, 2016, it filed a motion to reconsider or certify for immediate appeal the December 30, 2015 order.  (Rec. doc. 50).  While that motion was pending, the case was reassigned to the Honorable Mary Ann Vial Lemmon for all further proceedings.  (Rec. doc. 52).

Judge Lemmon held oral argument on Jolie Design's motion to reconsider or certify for immediate appeal and took the matter under advisement on March 16, 2016.  (Rec. doc. 58).  On March 31, 2016, Judge Lemmon granted the motion, but only as to the request for certification for immediate appeal.  (Rec. doc. 59).  Thereafter, on April 14, 2016, van Gogh filed a consent motion to reopen the case (rec. doc. 60), which the District Judge granted. (Rec. doc. 61).

On June 14, 2016, Judge Lemmon ruled on the substantive motions of each party, denying van Gogh's motion to vacate, granting Jolie Design's motion to confirm and granting Jolie Design's motion for attorneys' fees and costs.  (Rec. doc. 62).  Judge Lemmon ordered Jolie Design to submit to this Court within 15 days a motion setting forth the amounts claimed in costs and attorneys' fees.  (*Id.*).  It is that motion that is subject of this Report and Recommendation.

---

[1] The Honorable Helen G. Berrigan was the District Judge to whom the case was assigned at the time.

## II.   LAW AND ANALYSIS

### A.  Standard of Review

As to the law to be applied to its claim for costs and fees, Jolie Design argues that because the entitlement to those costs and fees in this case arises out of a contract between the parties that contains a Louisiana choice-of-law provision, this Court must look to Louisiana law to determine the reasonableness of the fee request.  (Rec. doc. 63-1 at 2). Defendant does not argue otherwise.  However, as a threshold matter, the Court observes that it is not altogether clear that Louisiana law should be applied to the present claim, at least not based upon the authority cited by Plaintiff.

Jolie Design cites the decision in *Bollinger Marine Fabricators, LLC v. Marine Travelift, Incorporated*[2] for the foregoing proposition.  The relevant language in that case is as follows:

> "A fee award is governed by the same law that serves as the rule of decision for the <u>substantive issues in the case</u>."  *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000)). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."  *Id.* at 461.  <u>Because this Court is sitting in diversity</u> and Bollinger's right to attorneys' fees is set forth by contract, Louisiana law governs the claim for attorneys' fees.
>
> (*Id.* at *3) (emphasis added).

The language emphasized above distinguishes this case from the *Bollinger* case in two respects.  First, the Court does not sit in diversity in this matter, as Jolie Design filed this suit specifically seeking a confirmation of the arbitration award under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958) 21 U.S.T. 2517, T.I.A.A. 6997, 330 U.N.T.S. 3 (the "New York Convention"), as implemented

---

[2] No. 14-CV-1743, 2015 WL 4937839 at *3 (E.D. La. Aug. 18, 2015).

by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201, *et seq.*  (Rec. doc. 1).  Accordingly, the case is also distinguishable because the substantive issues in <u>this</u> case – a case brought solely to confirm an arbitration award – were not decided under Louisiana law, as is reflected in the District Judge's order and reasons.  On the other hand, the contract giving rise to Jolie Design's entitlement for costs and fees contains a Louisiana choice-of-law provision, and the District Judge applied Louisiana law on contract interpretation to find that the contract allowed for the award of costs and fees to the "prevailing party" in this case.  (Rec. doc. 62 at pp. 20-21).

Under the circumstances, it is not altogether clear that Louisiana law should be applied to the present claim for costs and fees, as opposed to federal law.  Fortunately, however, the Court need not delve further into this question, as it finds that whether analyzing Plaintiff's motion under Louisiana or federal law, the appropriate framework for that analysis is the same – the well-established "lodestar" method.  *See, e.g.*, *Covington v. McNeese State University*, 118 So.3d 343, 351 (La. 2013) (noting that a strong presumption exists in favor of the "lodestar" method when determining what constitutes a "reasonable fee" for purposes of awarding attorneys' fees).

The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983).  The product of this calculation is called the lodestar.  *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied sub nom.* 516 U.S. 862, 116 S.Ct. 173 (1995).  There is a "strong" presumption that the lodestar calculation produces a reasonable fee.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S.Ct. 1662, 1673 (2010).

The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). Attorneys are required to make a good-faith effort to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 n. 15 (5th Cir. 1987). These requirements underlie the core principle that hours that are not properly billed to one's client are likewise not properly billed to one's adversary. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

Once the lodestar has been determined, the Court must then consider the applicability and relative weight of the 12 factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3] While the Court may make upward or downward adjustments to the lodestar figure if the Johnson factors so warrant, the lodestar is presumptively correct and should be modified only in exceptional cases. *See Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993). After calculation of the lodestar, the burden shifts to the party opposing the application to contest the reasonableness of the hourly rate requested and/or the reasonableness of the hours expended ". . . by affidavit or brief with sufficient specificity to give [the] fee applicants notice . . ." of those objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990).

---

[3] The 12 *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

**B.  Analysis**

   1.  *Reasonable hourly rate*

The first step in calculating the lodestar is determining the reasonable hourly rate to be applied as to each attorney's time.  In this case, there does not appear to be a dispute as to the hourly rates charged by the three attorneys whose names or initials appear in the invoices submitted.  For the reasons that follow, the Court need only decide whether the requested rate of $250/hour for Plaintiff's counsel, Timothy Kappel, is reasonable.

Based upon the materials submitted by Plaintiff, including Mr. Kappel's affidavit in support of the fee application (rec. doc. 63-2 at pp. 1-3), the 2013 Economic Survey of the American Intellectual Property Law Association (*id.* at pp. 47-52), this Court's knowledge of the prevailing market rates in this community and the lack of any objection from van Gogh as to the requested rate, the Court finds Mr. Kappel's hourly rate of $250 to be reasonable.

As to the other attorneys for whose time Jolie Design seeks to recover, they fall into two categories: (1) Matthew Miller III and others of the Carver Darden firm and (2) an un-named individual associated with Mr. Kappel's firm whose initials are "JOB."  (Rec. doc. 63-2 at p. 33).  As to the latter, the Court has no idea who "JOB" is, whether "JOB" is an attorney or paralegal, why "JOB" was involved in the case or whether "JOB's" work in the case was reasonable and necessary.  As such, the Court cannot recommend that "JOB's" time be compensated.

As to Mr. Miller and the other Carver Darden attorneys and paralegals whose fees Plaintiff seeks to recover, for reasons set forth later in this opinion, the Court need not determine the reasonableness of their hourly rates because it does not find the time expended by them to be compensable.

6

>    2.   *Reasonable hours expended*

Concerning the movant's burden on a motion for attorneys' fees, Magistrate Judge

Roby, in *Creecy v. Metropolitan Property and Casualty Insurance Company*, aptly stated the

framework:

> The party seeking attorney's fees bears the burden of
> establishing the reasonableness of the fees by submitting
> adequate documentation and time records of the hours
> reasonably expended and proving the exercise of "billing
> judgment." Attorneys must exercise "billing judgment" by
> excluding time that is unproductive, excessive, duplicative, or
> inadequately documented when seeking fee awards.
> Specifically, the party seeking the award must show all hours
> actually expended on the case but not included in the fee
> request. . . . The remedy for failing to exercise billing judgment
> is to reduce the hours awarded as a percentage and exclude
> hours that were not reasonably expended. Alternatively, this
> Court can conduct a line-by-line analysis of the time report.
>
> > *Creecy*, 548 F. Supp.2d 279, 285-86
> > (E.D. La. 2008) (citations omitted).

In the present matter, counsel for Jolie Design has submitted detailed time sheets and

affidavits supporting their respective requests for fees. However, as was the case in *Creecy*,

those submissions do not mention any hours expended by counsel but not included in the

fee request. *Id.* at 286. The Court has no choice, therefore, but to conclude that counsel failed

to exercise any billing judgment.[4]

If a lack of billing judgment was the only concern here, an across-the-board

percentage reduction of the bills might be appropriate. However, the Court notes additional

shortcomings in the fee request that require it – despite Plaintiff's invitation otherwise – to

---

[4] There are numerous "entries" on the submitted invoices that are redacted, but this does not constitute a
demonstration of billing judgment. In fact, as discussed below, when combined with the fact that some of these
redactions are embedded within "block-billed" entries for which partial recovery is sought, it compounds the
difficulty the Court has in determining whether the time for which Plaintiff seeks recovery was reasonably
expended.

conduct a line-by-line analysis of counsel's bills.  *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006).

### a.  Use of multiple attorneys

While there is no rule that prohibits the use of multiple attorneys in a matter such as this one, the Court must nonetheless determine whether the time billed by each attorney was reasonably expended in this case.  And while a party is free to employ multiple attorneys, that party's opponent is not required to pay for duplicative work by those attorneys – it remains the burden of the party seeking fees to demonstrate the reasonableness of all the fees it seeks.  *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).

As noted, Jolie Designs seeks to recover some $14,919 in fees incurred by certain attorneys of the Carver Darden firm in addition to those of its lead counsel, Timothy Kappel. For the following reasons, the Court recommends that none of these fees be assessed against Defendant.

The Court makes this threshold observation:  Jolie Design correctly states in its reply brief that the Court should "use its overall sense of the suit in calculating an award" of fees. (Rec. doc. 70 at p. 10).  As it happens, this Court has a very keen "sense" of this case, having interacted over many months with counsel and the parties in attempts to settle the dispute amicably.  (*See*, *e.g.*, rec. doc. 40).  In large part owing to these interactions, the Court is surprised (as are van Gogh and her counsel, apparently) to now learn that there were three attorneys from another law firm working on this case.  None of them were ever enrolled in the case – Mr. Kappel is the lone attorney enrolled for Plaintiff.  None of them participated in any status or settlement conferences or hearings, nor did they write or sign a pleading.

8

Mr. Kappel stated in conclusory fashion in Plaintiff's reply memorandum that Carver Darden's participation in this case was "perfectly reasonable" in part because they were "heavily involved in the [underlying] arbitration itself." (Rec. doc. 70 at p. 5). Missing from the record, however (including from Kappel's affidavit), is any detailed statement explaining why the actual time billed by these attorneys was necessary and not duplicative of Mr. Kappel's. Indeed, van Gogh's counsel correctly observed at the hearing that the vast majority of that billed time was for conversations and "consulting" among themselves and Mr. Kappel, set forth in entries like: "Consult with Mr. Kappel regarding Ms. Van Gogh," [c]onsult on settlement," and [c]onsult with Mr. Kappel regarding motion." (Rec. doc. 63-3 at pp. 5-6). Other entries include "[r]eview draft motions" and "[s]ettlement and timing issues." (*Id.* at pp. 6-7).

There is no evidence in this record that this work was reasonable or necessary. Moreover, entries such as the ones quoted above make it impossible for the Court to determine what was being billed for, let alone whether that time was reasonably expended. For these reasons, the Court recommends that any award of fees not include those incurred by Carver Darden.

<u>b.   Billing for other proceedings</u>

The bills submitted by Jolie Design for both Mr. Kappel and Carver Darden are rife with entries relating to a separate Canadian confirmation proceeding and TTAB proceedings that are, by definition, not part of <u>this</u> case. (*See, e.g.*, rec. doc. 63-2 at pp. 17, 23, 26, 33). These charges were simply included in Plaintiff's original submission to the Court, with no explanation whatsoever as to why they were recoverable in this case. Only after van Gogh pointed out in her brief that those proceedings were unrelated to this case did Jolie Design

make any effort to explain (in its brief but not in an affidavit) why these charges were included in its fee request.   Notwithstanding the serious lack of billing judgment demonstrated by the unexplained inclusion of this time expended in wholly separate proceedings in other venues, the Court finds after its line-by-line analysis of the charges themselves that none of them should be recoverable here – they are simply not part of this case.  Counsel for van Gogh has suggested that inclusion of these charges in the first place is part of a calculated strategy, *i.e.*, if a reduction of the total claim is all-but-inevitable, it is best to make that total claim as large as possible.  It is hard for the Court to avoid that conclusion.

c.   Block billing and vague and redacted entries

There is no question that Jolie Design's counsel engaged in block billing; he admits as much.  (Rec. docs. 63-2 at p. 2; 70 at p. 7).  By all appearances, however, counsel did nothing to remedy or even address the problem or to otherwise assist the Court in determining whether some or all of these block-billed entries were reasonable and/or related to this case.

While Jolie Design rather casually urges the Court to "overlook instances of block billing" to "achieve a just result,"[5] those two ideas are mutually exclusive – a just result cannot be achieved in this case by overlooking such obvious problems with Plaintiff's submission.

From the first bill submitted all the way through the last, there are numerous entries of 6.0, 7.0 and as much as 9.70 hours for multiple tasks lumped together, some of which are unrelated to this case, *i.e.*, the Canadian and TTAB proceedings.  (*See, e.g.*, Invoice of Apr. 6, 2015, rec. doc. 63-2 at pp. 43-44)  Nevertheless, fees for all of that time are sought by Jolie Design.  Worse still, there are block-billed entries as high as 5.0 hours where part of the work

---

[5]  (Rec. doc. 70 at p. 8).

done is actually redacted from the invoice, yet Jolie Design seeks to recover for the entire 5 hours. (*See id.* at p. 44, entry of Mar. 6, 2015). This is a particularly egregious variant of block billing that the Court absolutely cannot simply "overlook."

While the Supreme Court has indicated that block billing is not a basis for an outright refusal to award attorneys' fees, *Trulock v. Hotel Victorville*, 92 Fed. Appx. 433, 434 (9th Cir. 2004)(*citing Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12) , the caselaw makes clear that courts possess the discretion and authority to address situations where block billing adversely affects their ability to accurately assess the reasonableness of a fee petition. *See, e.g.*, *Canon U.S.A., Inc. v. S.A.M., Inc.*, No. 09-CV-1201 2009 WL 35334 at *4 (E.D. La. Jan. 6, 2009). The most common method for addressing block billing is a percentage reduction of the award. *Id.* at *5 (citing *Delgado v. Village of Rosemont*, No. 03-CV-7050, 2006 WL 3147695 at *7 (N.D. Ill. Oct. 31, 2006) (reduction of total fees by 35% for vagueness, block billing and lack of detail); *Phoenix Four, Inc., v. Strategic Resources Corporation*, No. 05-CV-4837, 2006 WL 2135798 at *2 (S.D. N.Y. Aug. 1, 2006) (fee award reduced by 25% for block billing); *Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2005 WL 3099592 at *7 (S.D. N.Y. Nov. 17, 2005); (reduction of award by 25% for block billing, excessive hours, and vagueness in time entries); *Sea Spray Holdings, Ltd. v. Pali Fin. Group Inc.*, 277 F.Supp.2d 323, 326 (S.D. N.Y. 2003) ("because of ... the inherent difficulties the court would encounter in attempting to parse out reasonable hours and manpower for appropriate tasks, the court finds that a 15% "flat reduction of fees ... is warranted."); *Creecy*, 548 F.Supp.2d at 286.

For the foregoing reasons, the Court recommends that the recoverable hours be reduced by 35% for block billing. This reduction accounts only for the block billed entries

and does not account for the lack of billing judgment demonstrated in Jolie Design's submission, which is address below.

### d. Failure to exercise billing judgment

As noted above, attorneys must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, showing all hours actually expended on the case but not included in the fee request. *See, e.g.*, *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *Leroy*, 831 F.2d at 585 n. 15. The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage <u>and</u> to exclude hours that were not reasonably expended. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40.

The bills submitted in this case by Jolie Design reflect the exercise of no billing judgment whatsoever. There is not one instance where any time actually expended on this case was not included in the fee request – not one hour. In fact, there are entries for which Jolie Design seeks to recover where the description of the work done is <u>completely</u> redacted. The most egregious example is found at page 38 of record document 63-2. This is an invoice dated May 6, 2016, in which counsel seeks to recover for entries totaling 22.70 hours – or $5,675.00 – yet all of the descriptions of the work associated with this time are redacted.

The Court is at a loss to explain how it is even possible that counsel could make such a submission in good faith and is extremely frustrated at the amount of time that it has had to spend trying to decipher and understand counsel's bills as a consequence of these actions. The complete failure to exercise billing judgment should result here in an additional 35% reduction of the recoverable award and such reduction will be recommended by this Court to the District Judge.

Unfortunately, a flat percentage reduction of the entire bill is only part of the solution, as the Court finds (as it did with regard to the time spent on unrelated proceedings) that a great deal of time billed in this case by counsel for Jolie Design was unnecessary and excessive. Specifically, more than half the time billed by Plaintiff's counsel was in connection with his unsuccessful attempts to defeat van Gogh's motion to stay the matter, to lift that stay when it was put in place, to have the District Judge reconsider her decision not to lift that stay, and to draft an appellate brief to the Fifth Circuit on the issue of the stay that was not filed.

In seeking to recover 100% of this time,[6] Jolie Design castigates van Gogh for her "aggressive opposition," "diversionary" and "relentless" litigation tactics and "dilatory" maneuvering. All of this complaining about the stay litigation overlooks an all-important fact – van Gogh won every one of those motions. Indeed, it was Jolie Design's dogged insistence on undoing the District Judge's stay that directly resulted in its lawyer billing hundreds of unnecessary hours.

Judge Berrigan granted van Gogh's motion to stay and stayed the case on July 30, 2015. (Rec. doc. 38). She denied Jolie Design's motion to lift the stay on December 30, 2015. (Rec. doc. 49). After the case was reassigned, Judge Lemmon granted Plaintiff's request to certify the stay order for appeal, but did not grant (or even address) Plaintiff's motion to reopen the case. (Rec. doc. 59). Thereafter, some eight months after the case was stayed, van Gogh filed a consent motion to reopen the case, which motion was granted. (Rec. doc.

---

[6] Counsel states that "at least $50,000 in legal fees [was] a direct result of the stay." (Rec. doc. 63-1 at p. 6).

61).[7]  Two months later, without a single additional pleading being filed, Judge Lemmon granted Plaintiff's motion to confirm.  (Rec. doc. 62).

    In supporting its argument that it should recover 100% of the fees associated with the aforementioned efforts, Jolie Design makes two arguments, each unconvincing to this Court.  First, it argues that the fact that van Gogh ultimately agreed to reopen the case eight months after Judge Berrigan stayed it demonstrates that her effort to stay the case was a "dilatory maneuver."  (Rec. doc. 63-1 at 6).  But a stay is dilatory by definition.  And while Jolie Design uses the term pejoratively here, that argument overlooks the fact that van Gogh's "maneuver" had the imprimatur of the District Judge.  It is not at all clear to the Court why van Gogh should be faulted or penalized for a litigation strategy that never failed.

    The second argument advanced by Jolie Design to suggest it was somehow wronged or victimized by van Gogh's seeking the stay was articulated at the hearing, where counsel argued that Judge Lemmon's certification of the issue for appeal somehow establishes that Judge Berrigan's decisions on the stay issue were wrong and, by extension, van Gogh's efforts to maintain the stay were unjustified.  To be clear, neither of Judge Berrigan's rulings issuing and then maintaining the stay were ever disturbed, on appeal or otherwise.  All Judge Lemmon did was certify the issue for appeal – no one knows what the outcome of that appeal would have been.  To suggest these circumstances <u>establish</u> that van Gogh's efforts were made in bad faith is an overreach.

    The Court is similarly troubled by the idea that time spent by Jolie Design's counsel in connection with the settlement conference <u>ordered</u> by the Court should be recoverable

---

[7]  In analyzing the bills submitted by Jolie Design, the Court made the interesting discovery that Mr. Kappel billed his client 1.3 hours for reviewing and revising that one-page consent motion.  (Rec. doc. 63-2 at p. 5).

because of van Gogh's "rejection of reasonable settlement offers."  (Rec. doc. 63-2 at p. 3).
This is nothing less than a misstatement of the facts – and this Court should know because it
presided over the conference and numerous follow-up discussions with counsel for both
parties.  At no time did van Gogh or her counsel act unreasonably or take a position vis-à-vis
settlement that could be viewed that way.  The suggestion otherwise is unnecessary and
wrong and to require van Gogh to pay for her opponents counsel's time spent on
unsuccessful settlement efforts that were ordered by the Court would, in this Court's view,
be manifestly unjust.

Jolie Design correctly suggests that this Court should use its "overall sense of the suit"
to achieve "rough justice" in fashioning a fee award.  (Rec. doc. 70 at p. 10).  This Court does
not believe that justice is done – rough or otherwise – by awarding 100% of the fees
requested in this case, in which the original arbitration award included an award of
attorney's fees of $45,000 (which was reduced from a request of $53,464).  It is inconceivable
that an award of twice that amount would be considered reasonable by Jolie Design,
particularly where the vast majority of those fees were incurred in an aggressive, and losing,
effort to defeat van Gogh's motion to stay.  For that reason, the Court has closely analyzed
the invoices submitted and will recommend the following charges be included in the fee
award, before reduction for block billing and lack of billing judgment.

3.  *Calculating the Lodestar – Mr. Kappel's Invoices*[8]

| DATE OF INVOICE | AMOUNT CLAIMED | AMOUNT ALLOWED (BEFORE REDUCTION) |
|---|---|---|
| April 6, 2015 | $10,675.00 | **$5,050.00** – all redacted and partially redacted charges disallowed |
| May 6, 2015 | $7,000.00 | **$0** – all entries are either redacted or partially redacted and are therefore disallowed |
| June 5, 2015 | $23,525.00 | **$23,525.00** |
| July 13, 2015 | $15,105.00 | **$15,050.00** – entry for "JOB" disallowed |
| July 22, 2015 | $1,600.00 | **$125.00** – remaining time not clearly related to this proceeding |
| September 14, 2015 | $8,025.00 | **$150.00** – remaining time related to Canadian proceeding and settlement |
| September 30, 2015 | $5,175.00 | **$0** – all time unrelated to this case or related to settlement or lifting stay |
| November 5, 2015 | $4,375.00 | **$0** – all time unrelated to this case or related to settlement or lifting stay |
| December 2, 2015 | $100.00 | **$0** – all time related to Canadian proceeding |
| January 20, 2016 | $9,725.00 | **$5,625** – 22.5 hours allowed - remaining time is excessive or involved other attorneys |
| February 20, 2016 | $3,325.00 | **$3,325.00** |
| March 30, 2016 | $4,875.00 | **$1,500.00** – time billed is excessive for the tasks undertaken.  6 hours allowed for preparation and attendance at hearing. |
| April 28, 2016 | $7,025.00 | **$1,000.00** – time related to unfiled appeal brief and corresponding with other counsel disallowed |

---

[8]  The Court previously determined that the Carver Darden charges should not be awarded.

The total amount this Court recommends <u>before reduction</u> is $55,350.  After reducing that award by 70% – 35% for block billing and 35% for lack of billing judgment – the total fee award recommended by this Court is $16,605.00.  To this amount should be added the undisputed costs associated with the action of $531.74.

>    4.  *Adjusting the Lodestar under* Johnson

As noted above, once the lodestar is determined, the Court may then adjust that figure upward or downward depending on the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).  To the extent that consideration of any of the *Johnson* factors are subsumed in the lodestar calculation, they should not be reconsidered when determining whether an adjustment to the lodestar is required.  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998).

In this case, the Court has carefully considered the *Johnson* factors and concluded that they do not warrant an upward or downward departure, particularly in light of the fact that the Court thoroughly considered those factors in its line-by-line determination of the lodestar.

## III     RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's motion to set costs and attorneys' fees be granted and that Plaintiff be awarded $531.74 in costs and $16,605 in attorneys' fees, for a total award of **$17,136.74**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

17

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[9]

New Orleans, Louisiana, this 11th day of _____ August _____, 2016.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[9] *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.